# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROTEX GLOBAL, LLC | : | |
| | : | CIV NO. 1:17-CV-2118 |
| Plaintiff, | : | (Chief Judge Conner) |
| v. | : | (Magistrate Judge Carlson) |
| GERARD DANIEL WORLDWIDE, INC. | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. Factual Background

We are overseeing on-going discovery disputes in this complex patent litigation. As part of this process, we have emphasized for all counsel our view that discovery in this case should be conducted in a symmetrical fashion, with the greatest degree of transparency possible, consistent with legitimate concerns relating to confidentiality of trade information. We also underscored for all counsel our view that they should work cooperatively to tailor discovery to the needs of the case and noted that clear communications between counsel are essential to achieve these goals.

Notwithstanding our expression of these aspirational goals, the parties remain embroiled in a discovery dispute relating to a motion to compel discovery filed by

1

the plaintiff, Rotex. (Doc. 107). In this motion to compel, Rotex seeks two forms of relief. First, it asks that we direct Gerard Daniel Worldwide (GDW) to re-designate customer lists, which it had previously identified under a stipulated protective order as "Highly Confidential," as merely "Confidential". The effect of this re-designation would be to allow Rotex's counsel to share GDW's customer lists with officials at Rotex. Additionally, or in the alternative, Rotex argues that GDW has redacted the identities of these customers from its "Highly Confidential" discovery disclosures. Rotex contends that these redactions should be removed because the identity of the GDW customers is an important element of proof in Rotex's claims that GDW infringed its patent and then used that infringed patent to market equipment to Rotex customers. According to the plaintiff, the actual identity of the GDW customers is a crucial component to showing the loss of sales suffered by Rotex since it would demonstrate which former Rotex customers later purchased infringing goods from GDW.

 For its part, GDW has responded to the twofold argument advanced by Rotex with a twofold rejoinder. First, GDW argues that Rotex is not entitled to compel it to re-designate customer information as merely "Confidential" rather than "Highly Confidential" since the parties' stipulated protective order expressly allows for the designation of customer information as "Highly Confidential." In addition, citing primarily to cases which have allowed the redaction of sensitive but irrelevant

information from documents, GDW contends that Rotex's argument that the identities of customers potentially lost by Rotex due to GDW's alleged infringement is relevant to its claims and loss calculations, "while superficially appealing, really makes little sense," since other factors may potentially also affect Rotex's sales. (Doc. 135, at 17).

With Rotex's claims, and GDW's rejoinders, framed in this manner, it is apparent that this motion to compel in the first instance stems out of a dispute between the parties regarding the meaning and interpretation of a stipulated protective order entered into by the litigants in November of 2017. (Doc. 73). Such stipulated protective orders are a commonplace feature of complex commercial litigation where sophisticated parties are engaged in a dispute that may require the disclosure of sensitive business information. The stipulated protective order is designed to allow this discovery process to move forward in a fashion that allows for the sharing of information while protecting client confidences. When this process works correctly, it eliminates the need for discovery litigation. However, when—as in this case—the process breaks down, the court is called upon to intervene.

Given the nature of this particular dispute, our consideration of the parties' contentions begins with the language of their November 2017 stipulated protective order. (Doc.73). That order, which provides a process for disclosing sensitive commercial information, allows parties to designate information as either

"Confidential" or "Highly Confidential," and defines these designations in the following terms:

> For purposes of this Protective Order, the term "Confidential" shall mean any and all documents, materials, or information concerning the products, projects, activities, intellectual property, marketing, promotion, business, or financial affairs of any party to the Action acquired in the course of the party's respective work that such party believes in good faith would qualify for a protective order if sought from the Court. For purposes of this Protective Order, the term "Highly Confidential" shall mean any and all Confidential Material that qualifies as "Confidential" and further relates to financial information about the party, future business plans, pending patent applications, customer information, competitive information, product formulation details, trade secret information, or proprietary computer source code.

(Id., ¶ 4).

The protective order then prescribes how "Confidential" and "Highly Confidential" information may be disseminated and used by the parties in their litigation. In this regard, the order provides the following with respect to the disclosure of "Confidential Information":

Confidential information shall be disclosed only to:

(a) No more than two employees, officers, or board members of each party, to be designated as such by each party in writing prior to disclosure;

(b) This Court and any court to which an appeal might lie, including court personnel and trial jurors;

(c) Outside litigation counsel of record for the non-designating parties, together with their respective associate attorneys and office personnel employed or engaged in the preparation for, or aiding in the trial of, the Action;

(d) Outside vendors who perform microfiching, photocopying, computer classification, or similar clerical functions, but only for so long as and to the extent necessary to perform those services;

(e) Court reporters and other persons engaged in preparing transcripts of testimony of hearings in the Action;

(f) Outside experts and/or advisors consulted by counsel in connection with the Action, whether or not retained to testify at trial, except that, absent written consent from the Designating Party, no party shall disclose Confidential Material to any expert or advisor, or to such person's support personnel, if such person currently or at any time in the past has been an employee, contractor, or customer of any of the parties;

(g) Jury selection consultants, and participants in any mock trial or similar simulation, employed for purposes of trial preparation in this matter but only for so long as and to the extent necessary to perform those services;

(h) Witnesses at any deposition in the Action, subject to the provisions of paragraphs 11, 12, and 13 of this Protective Order to the extent that the witness is reflected on the face of the document, or is reasonably believed by counsel to be, a writer or a recipient of the document; and

(i) Any other persons to whom the Designating Party agrees in writing.

(Id., ¶ 6).

As might be expected, the stipulated protective order then affords a heightened level of protection to information designated as "Highly Confidential," stating that:

In the event that a party designates information as Highly Confidential, the information shall be treated the same as and shall be subject to the same procedures as set forth in this Protective Order for information designated Confidential, except that such information shall be disclosed only to persons identified in subparagraphs b-h of Paragraph 6 above.

(Id., ¶ 8).

5

While cast in a somewhat oblique fashion, what this provision of the protective order does by indirection is twofold: First, it allows litigating counsel and outside experts access to "Highly Confidential" but relevant information so that they may use that information to advance claims or prepare defenses. In addition, though, this provision of the order ensures that "Highly Confidential" data will not be shared with representatives of the opposing party, who might otherwise be tempted to utilize this information to gain some unfair competitive commercial advantage over a business rival.

The protective order then provides a mechanism for parties to challenge designations of data as either "Confidential" or "Highly Confidential," stating that:

> If any documents, information, or testimony are designated as Confidential or Highly Confidential, but are not believed in good faith to be Confidential or Highly Confidential by any Receiving Party, that party shall notify the Designating Party, in writing, and request a release of confidentiality. If such a release is not forthcoming within five (5) days, the objecting party may apply to the Court for an order requiring the release of confidentiality. On any motion to the Court regarding a claim of confidentiality, the party seeking to assert confidentiality shall have the burden of proof.

(Id., ¶ 15).

While the protective order provides these procedures for the sharing of "Confidential" and "Highly Confidential" information, the stipulated order does not appear to provide any redaction guidelines for use by the parties.

Guided by the terms of this protective order, we turn to a consideration of this instant motion to compel. For the reasons set forth below, this motion will be GRANTED in part and DENIED in part as follows: First, to the extent that Rotex seeks to have highly confidential customer information of GDW re-designated as confidential, the motion is DENIED, since the highly confidential designation made by GDW is proper under the protective order and is fully justified in order to avoid direct disclosure of customer information to corporate representatives of Rotex. However, to the extent that Rotex's motion seeks the release of this customer information in a highly confidential manner but without redaction, the motion is GRANTED since the customer information is relevant to Rotex's calculation of its potential losses, and the highly confidential designation of this information, which we have sustained, adequately protects this data from improper disclosure to representatives of the opposing party who might gain some unfair competitive commercial advantage through a direct disclosure of this data.

## II. Discussion

### A. Guiding Legal Principles

The resolution of this discovery dispute is guided by familiar legal principles. At the outset, Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery, and provides that:

**(a) Motion for an Order Compelling Disclosure or Discovery**

7

> **(1) In General.** On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. . . .

Fed. R. Civ. P. 37(a).

The scope of what type of discovery may be compelled under Rule 37 is defined, in turn, by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides that:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Therefore, a court's decisions regarding the conduct of discovery will be disturbed

only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). Likewise, discovery sanction decisions rest in the sound discretion of the court. Grider v. Keystone Health Plan Cent., Inc., 580 F.3d 119, 134 (3d Cir. 2009). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing Scott Paper Co. v. United States, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J.1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

When presented with claims that discovery disclosures may reveal confidential trade secret information, it is also well-settled that:

> [T]he Federal Rules of Civil Procedure expressly recognize that this type of trade information may be protected from disclosure and specifically authorize courts to enter orders "requiring that a trade secret or other confidential research, development, or commercial

9

information not be revealed...." Fed.R.Civ.P. 26(c)(1)(G). The paradigm for assessing requests for compelled disclosure of trade secret information involves a straightforward assessment of the competing interests of the parties. In this setting:

> The courts have developed a balancing test for discovery of information that one party claims would result in undue harassment, oppression, or embarrassment. This test requires the trial judge to weigh the interests of both parties in deciding whether or not to protect the information. A three pronged test has developed in regards to trade secrets. For a protective order to be granted, a party must show that the information is confidential and that the disclosure would be harmful. The burden then shifts to the party seeking disclosure to show that the information sought is relevant and necessary at this point in the litigation. Centurion Industries, Inc. v. Warren Steurer and Associates, 665 F.2d 323 (10th Cir.1981); Empire of Carolina v. Mackle, 108 F.R.D. 323 (S.D.Fla.1985).

Kaiser Aluminum & Chemical Corp. v. Phosphate Engineering and Const. Co., Inc., 153 F.R.D. 686, 688 (M.D. Fla. 1994). See also Mannington Mills, Inc. v. Armstrong World Indus., Inc., 206 F.R.D. 525, 528 (D. Del. 2002).

RyCon Specialty Foods, Inc. v. Wellshire Farms, Inc., No. 1:09-CV-2092, 2011 WL 1342998, at *7 (M.D. Pa. Apr. 7, 2011), report and recommendation adopted, No. 1:09-CV-2092, 2011 WL 1988016 (M.D. Pa. May 23, 2011). The law also prescribes the applicable burdens of proof and persuasion for those who seek to prevent the disclosure of otherwise relevant evidence on commercial confidentiality grounds. In this regard:

> Under Rule 26(c)(7), a protective order may issue to protect trade secrets or other confidential research, development, or commercial

information. Smith v. Bic Corp., 869 F.2d 194, 199 (3d Cir. 1989). The party seeking protection has the burden of showing that it is entitled to the protection sought. Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 n.16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). Establishing that a particular document is a trade secret requires specific showings, and the party seeking to shield potentially responsive information from disclosure as a trade secret faces a high burden. Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 109-110 (3d Cir. 2010). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking [to prevent] disclosure. The injury must be shown with specificity." Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" will not establish good cause. Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986).

Jeddo Coal Co. v. Rio Tinto Procurement (Singapore) PTD Ltd., No. 3:16-CV-621, 2018 WL 1635153, at *3 (M.D. Pa. Apr. 5, 2018).

Further, we may authorize disclosure pursuant to an attorneys' eyes only protective order. Such limited disclosure may be particularly appropriate where the information sought is relevant, but it is alleged that wholesale disclosure to a competitor might result in unfair harm. As one court has observed:

> "In general, courts utilize 'attorneys' eyes only' protective orders when especially sensitive information is at issue or the information is to be provided to a competitor." Westbrook v. Charlie Sciara & Son Produce Co., Inc., No. 07–2657, 2008 WL 839745, at *4 (W.D.Tenn. Mar.27, 2008) (citing cases). See also Arvco Container Corp. v. Weyerhaeuser Co., No. 1:08–CV–548, 2009 WL 311125, at *5 (W.D.Mich. Feb.9, 2009) ("To be sure, courts in many circumstances have found that a specific showing of competitive harm justifies a restriction of confidential or trade secret information to 'attorney's eyes only.' "). The party moving for the restrictive AEO designation must detail the alleged harm it is likely to suffer absent the requested protection "with a particular and specific demonstration of fact, as distinguished from

stereotyped and conclusory statements." Nemir v. Mitsubishi Motors, Corp., 381 F.3d 540, 550 (6th Cir.2004) (quoting Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981)). In determining whether good cause exists for an AEO designation, courts must balance "the difficulties imposed upon plaintiff against the need to protect information from abuse by competitors." Arvco Container, 2009 WL 311125, at *6.

U.S. ex rel. Daugherty v. Bostwick Labs., No. 1:08-CV-354, 2013 WL 3270355, at *2 (S.D. Ohio June 26, 2013).

Finally, in a case such as this where we are called upon to interpret and apply a stipulated protective order that reflected the considered mutual judgment of counsel regarding how best to protect and use sensitive information, we are enjoined to treat the stipulated protective order as a contract and:

> [L]ook to the plain language of the Protective Order to determine its meaning [since] "Pennsylvania follows the plain meaning rule of contract interpretation, such that when a written contract is clear and unequivocal, its meaning must be determined by its contents alone." Sloan & Co. v. Liberty Mutual Ins. Co., 653 F.3d 175, 180 (3d Cir. 2011) (internal citation and quotation marks omitted). "The court must interpret the contract in a manner that gives reasonable meaning to all of its provisions and gives effect to all provisions of the contract." Grove v. Johnson Controls, Inc., Civil No. 1:12–CV–02622, 2016 WL1271328, at *15 (M.D. Pa. Mar. 31, 2016) (slip copy). "Contract provisions are to be interpreted so as to give each provision meaning, rather than rendering some provisions superfluous." Carter v. Exxon Co. USA, a Div. of Exxon Corp., 177 F.3d 197, 206 (3d Cir. 1999).

Scranton Prod., Inc. v. Bobrick Washroom Equip., Inc., 190 F. Supp. 3d 419, 442 (M.D. Pa. 2016). Yet, while we use the plain language of the stipulated protective order as our initial guidepost in resolving discovery disputes governed by some

12

stipulated order, in specific limited circumstances we may go beyond the terms of that order, provided the party seeking a deviation from the terms of the protective order makes an exacting showing of a need to depart from the parties' prior agreement. Simply put:

> Although courts have discretionary authority to modify a stipulated protective order, the burden of demonstrating that an agreed protective order should be modified is on the moving party. <u>Omega Homes, Inc. v. Citicorp Acceptance Co</u>., 656 F.Supp. 393, 403 (W.D. Va. 1987); <u>Zenith Radio v. Matsushita Elec. Indus. Co.</u>, 529 F.Supp. 866, 894 (E.D. Pa. 1981) . . .. [I]f a dispute arises as to the confidentiality of materials bearing such a designation, the party asserting confidentiality has the burden of proving that the material in question are within the scope of protection afforded by Fed. R. Civ. P. 26(c).

<u>Phillips Petroleum Co. v. Rexene Prod. Co.</u>, 158 F.R.D. 43, 46 (D. Del. 1994).

### B. **This Motion to Compel Will be Granted in Part and Denied in Part.**

Guided by these legal tenets, we turn to the instant motion. As we have noted, in this motion to compel, Rotex seeks two forms of relief. First, Rotex invites us to direct GDW to re-designate its customer information as simply "Confidential" rather than "Highly Confidential." This re-designation, if ordered by the court, would allow Rotex officials to gain direct access to the customer lists of its competitor GDW.

We will decline this invitation and deny this aspect of Rotex's motion. Treating the stipulated protective order as a contract, <u>Scranton Prod., Inc. v. Bobrick Washroom Equip., Inc.</u>, 190 F. Supp. 3d 419, 442 (M.D. Pa. 2016), and applying familiar principles of contract interpretation, we conclude that Rotex is not entitled

13

to this relief under the plain language of the protective order agreed to by these parties, which clearly states that:

> For purposes of this Protective Order, the term "Highly Confidential" shall mean any and all Confidential Material that qualifies as "Confidential" and further relates to financial information about the party, future business plans, pending patent applications, *customer information, competitive information*, product formulation details, trade secret information, or proprietary computer source code.

(Doc. 73, ¶ 4) (emphasis added).

This definition of "Highly Confidential" information by its terms embraces customer information like that designated highly confidential by GDW. Therefore, a straightforward interpretation of the order indicates that this information has been properly designated as "Highly Confidential," and there is no basis under the protective order itself for a re-designation of this data. Moreover, Rotex has not pleaded or proven any exceptional circumstances which would justify a modification of this protective order to release this otherwise highly confidential information. See Phillips Petroleum Co. v. Rexene Prod. Co., 158 F.R.D. 43, 46 (D. Del. 1994). On the other hand, GDW persuasively argues that providing these customer lists directly to representatives of its competitor, Rotex, could result in competitive harm to GDW, the very evil which a "Highly Confidential" designation is designed to avoid. See U.S. ex rel. Daugherty v. Bostwick Labs., No. 1:08-CV-354, 2013 WL 3270355, at *2 (S.D. Ohio June 26, 2013).

However, to the extent that Rotex's motion concedes the "Highly Confidential" status of this customer information but requests that GDW be required to release this customer data in an unredacted form, the motion will be granted.

At the outset, we note that the parties' stipulated protective order does not appear to prescribe a process for document redaction. Therefore, this aspect of Rotex's motion does not appear to be controlled by the plain language of the protective order. Instead, as to this component of Rotex's motion to compel, we are guided by the principles of relevance which control discovery generally. Those guiding principles tell us that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

In terms of the relevance of this information, Rotex proffers that the identity of the GDW customers is an important element of proof in Rotex's claims that GDW infringed its patent and then used that infringed patent to market equipment to Rotex customers, since this information would demonstrate which former Rotex customers later purchased infringing goods from GDW and would reveal the overlap between the two firm's potential customer bases in these allegedly infringing goods. For its

part, GDW disputes Rotex's claims and asserts that this proffer of relevance, "while superficially appealing," is flawed since other factors may potentially also affect Rotex's sales. (Doc. 135, at 17).

At the risk of seeming to be superficial, we find that Rotex's proffer of relevance is more than superficially appealing. It is entirely persuasive when judged against the discovery standards prescribed by Rule 26, which authorize disclosure of "matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Additionally, under Rule 401 of the Federal Rules of Evidence:

> Evidence is relevant if:
>
> **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and
>
> **(b)** the fact is of consequence in determining the action.

Fed. R. Evid. 401.

Here, the customer information sought by Rotex is clearly relevant to any damages calculation since it would provide a basis for determining whether and to what extent GDW sold allegedly infringing articles to former or current customers of Rotex. Thus, depending upon an analysis of this information, GDW's customer information would have a tendency to make a fact of consequence in this litigation—Rotex's proof of lost sales due to GDW's marketing of allegedly infringing articles—either more or less probable than it would be without the evidence. Further,

16

GDW's objection to the release of this information based upon its assertion that other factors may have also affected Rotex's sales is unavailing. This argument confuses the concepts of relevant and conclusive evidence. In order to be discoverable, this information need only be relevant; that is, it only needs to have the tendency to make a fact more or less likely than it would have been without the evidence. This information does not have to be conclusive, however. Therefore, the fact that GDW argues that other factors could also affect Rotex's sales does not rob this evidence of potential relevance.

Finally, we note that we have considered the collateral harm which could flow to GDW as a result of the disclosure of this information in an unredacted form but note that the highly confidential designation of this information, which we have sustained, adequately protects this data from disclosure to representatives of Rotex, who might gain some unfair competitive commercial advantage through a direct disclosure of this data. Therefore, we conclude that the restrictions that were carefully crafted by the parties in their stipulated protective order sufficiently address GDW's concerns regarding potential misuse of this otherwise relevant data.

Having reached these conclusions, we will deny Rotex's request to re-designate this data, but grant their request to have this customer information released as "Highly Confidential" data but in an unredacted form.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| ROTEX GLOBAL, LLC | : | |
| --- | --- | --- |
| | : | CIV NO. 1:17-CV-2118 |
| | : | |
| Plaintiff, | : | (Chief Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| GERARD DANIEL WORLDWIDE, INC. | : | |
| | : | |
| Defendant. | : | |

## **ORDER**

In accordance with the accompanying Memorandum Opinion, IT IS ORDERED that Rotex's Motion to Compel, (Doc.107), is GRANTED in part and DENIED in part as follows:

First, to the extent that Rotex seeks to have highly confidential customer information of GDW re-designated as confidential, the motion is DENIED since the designation made by GDW is proper under the protective order and is fully justified in order to avoid direct disclosure of customer information to corporate representatives of Rotex.

Second, to the extent that Rotex's motion seeks the release of this customer information in a highly confidential manner but without redaction the motion is GRANTED since the customer information is relevant to Rotex's calculation of its

potential losses, and the highly confidential designation of this information, which we have sustained, adequately protects this data from representatives of the opposing party, who might gain some unfair competitive commercial advantage through a direct disclosure of this data.

So ordered this 11th day of October 2019.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge